NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0296n.06

Case No. 25-5593

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 10, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GARY W. CUNNINGHAM, JR., | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: BATCHELDER, MOORE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. A jury convicted Gary Cunningham of conspiring to distribute methamphetamine, distributing methamphetamine, and possessing cocaine with the intent to distribute it. He now challenges the sufficiency of the evidence supporting his convictions and requests a new trial based on alleged errors in the district court's evidentiary rulings. We affirm.

I.

A confidential informant tipped law enforcement off about a methamphetamine-dealing operation in Maysville, Kentucky. And the informant provided the names of two men involved: Frederick Overly and Gary Cunningham. The informant lived across the street from Overly and regularly saw him obtaining drugs from Cunningham in broad daylight. This arrangement was no secret. Overly told his neighbors that he got drugs from Cunningham. So an FBI drug task force opened an investigation and started using the informant to make controlled buys from Overly.

The informant conducted eight controlled purchases of methamphetamine over a six-month period, with police supervising and recording each buy. Each time, the informant would coordinate the buy with Overly. But Overly could never provide the requested amount of methamphetamine to the informant until after he met with Cunningham. Typically, he would call or text Cunningham, wait for Cunningham to drive to his apartment, and then leave the apartment to meet Cunningham. Overly would then return with the drugs and give them to the informant. Cell-phone records confirmed Overly's contacts with Cunningham.

A federal grand jury indicted Overly and Cunningham for aiding and abetting the distribution of methamphetamine and conspiring to distribute methamphetamine. Cunningham was also charged with possessing cocaine with the intent to distribute it. Ten days before trial, Overly pled guilty to the nine counts against him. Cunningham proceeded to trial, and a jury convicted him on all counts. He received a sentence of 268 months' imprisonment followed by 10 years of supervised release. Cunningham timely appealed.

II.

On appeal, Cunningham asks us to vacate his convictions, arguing there was insufficient evidence to convict him of conspiring to distribute methamphetamine and aiding and abetting the distribution of methamphetamine. In the alternative, he requests a new trial because the district court excluded exculpatory statements that Overly made at his plea hearing and admitted evidence about Cunningham's previous cocaine sales. Both challenges fail.

A.

After the government rested at trial and at the close of evidence, Cunningham moved for a judgment of acquittal on all counts based on insufficient evidence. *See* Fed. R. Crim. P. 29(a). The district court denied both motions. We review his preserved sufficiency-of-the-evidence claim

de novo. *United States v. Raymore*, 965 F.3d 475, 484 (6th Cir. 2020); *United States v. Baskerville*, 164 F.4th 459, 472 (6th Cir. 2026). In doing so, we view the evidence in the light most favorable to the government and resolve any credibility issues in favor of the jury verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). If "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the verdict must stand. *Id.* So Cunningham "faces a very heavy burden in attempting to overturn the denial of [his] Rule 29 motion." *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014) (quotation omitted). He can't meet that burden.

1.

Cunningham's conspiracy conviction required the government to prove beyond a reasonable doubt "three elements: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Bailey*, 170 F.4th 572, 582–83 (6th Cir. 2026) (quotation omitted). Circumstantial evidence alone can be enough to prove these elements. *Id.* at 583. Here, the evidence at trial showed that Cunningham knowingly agreed with Overly to distribute methamphetamine and participated in that scheme. Based on that evidence, a reasonable juror could have concluded that Cunningham was guilty beyond a reasonable doubt. So his sufficiency challenge fails.

Start with the tip that triggered the government's investigation. The confidential informant lived across the street from Overly and initially approached police after she regularly saw him retrieving drugs from Cunningham's car "in broad daylight" several times. R. 195, Pg. ID 1692. She told police that Overly sometimes drove away in Cunningham's car and returned with drugs. He would then show the drugs off to anyone nearby, telling his neighbors he got them from Cunningham. The informant's reports prompted an investigation, with officers hoping to "gain a

better understanding of" the distribution network beyond Overly and Cunningham. R. 196, Pg. ID 1895.

The government then presented evidence of eight controlled buys between Overly and the informant, all of which pointed to Cunningham as Overly's supplier. Federal agents recorded the buys by fitting the informant with a device that transmitted a live feed to them. Each buy followed a similar pattern.

First, the informant would call Overly to set up the buy. After a few calls like that, the informant didn't even need to get into details with Overly because the purchases became routine. Then, she'd walk to Overly's apartment to make the purchase. Critically, during every buy, Overly asked the informant to wait at his apartment before the transaction could proceed. What was he waiting for? Cunningham.

Before providing the drugs, Overly would call or text Cunningham, which the informant often observed. She testified that she recognized Cunningham's voice when Overly spoke to him on the phone. The informant knew Cunningham's voice because he had spent time with her son, and because she had purchased marijuana from him in the past. Plus, during the third buy, Overly handed his cell phone to the informant so that she could help him read Cunningham's texts. While reading those texts, she saw Cunningham's phone number, which she later sent to an officer. Cunningham's phone carrier later confirmed that number was registered to him.

Overly's calls and texts to Cunningham facilitated every controlled buy. Each time, Cunningham would meet with Overly outside the informant's presence, after which Overly would deliver the drugs to her. For instance, the first buy stretched on for hours because Overly didn't have as much methamphetamine as the informant requested. But even when the informant grew sick of waiting and wanted to leave, Overly couldn't give her the requested amount of drugs until

Cunningham arrived. Then, once Cunningham arrived and Overly met him in his car, the transaction ended just a few minutes later. The informant testified that Overly never completed a single sale until after he met with Cunningham.

Sometimes, as the informant waited with Overly, the two discussed Cunningham. During one buy, Overly told her that Cunningham often gave him cocaine or paid Overly to connect him with buyers. When Cunningham took too long to arrive for the third buy, the informant and Overly discussed arranging for her to purchase directly from Cunningham. And during the last controlled buy, Overly asked the informant as soon as she arrived if she wanted him to call Cunningham.

The government supported this testimony with recordings and transcripts of each controlled buy, as well as testimony from the officers about their surveillance efforts. That surveillance confirmed Cunningham's travels to and from the buys. Officers observed Cunningham driving by them on his way to and from Overly's apartment for several of the buys. They even saw Overly and Cunningham riding together sometimes.

Finally, the government presented cell-phone data confirming Overly and Cunningham's coordination. Investigators compared cell-phone records to the transcripts and recordings of the controlled buys. Whenever Overly told the informant that he was contacting his supplier, he contacted Cunningham at the exact same time. This occurred on over 30 occasions.

In sum, the jury heard that Cunningham was an integral part of every buy, and the government reinforced that conclusion with recordings, eyewitness testimony, and phone data. So a reasonable juror could certainly find that Cunningham participated with Overly in a scheme to sell methamphetamine.

Despite this mountain of evidence, Cunningham argues that his "mere presence" at the controlled buys isn't sufficient to show a conspiracy. Appellant's Br. at 37. It's true that drug-

conspiracy charges require "firm evidence of at least tacit coordination among conspirators." *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990). But the government provided evidence of explicit coordination, not just "mere presence." It played multiple recordings of Overly telling the informant that he was contacting Cunningham for drugs. And the informant testified that Overly could never complete a sale without meeting Cunningham. Plus, each buy demonstrated this coordination in action.

To explain his presence during the buys, Cunningham argues that he often gave Overly rides for innocent purposes like going to the store or running errands. But the informant testified that she "didn't see [Overly] regularly riding around with [Cunningham]," except when the two were dealing drugs. R. 196, Pg. ID 1793. So a reasonable jury could have concluded that Cunningham's presence with Overly during each buy wasn't just a coincidence. Faced with this evidence, the jury had much more than Cunningham's "mere presence" at the drug buys as a basis to convict him.

Cunningham next emphasizes that the government didn't present any photo or video evidence of hand-to-hand transactions between him and Overly. But that specific kind of evidence isn't necessary to support a conspiracy conviction. *United States v. Sadler*, 24 F.4th 515, 540 (6th Cir. 2022). A reasonable juror simply had to believe beyond a reasonable doubt that Cunningham participated in a scheme to sell methamphetamine. And that's exactly what the evidence from the controlled buys showed.

Cunningham also argues that the "buyer-seller" exception applies because there was no evidence that he agreed with Overly to sell drugs to downstream customers. The buyer-seller exception provides that a sale of drugs without additional evidence of an agreement to distribute those drugs isn't enough to establish a conspiracy. *United States v. Wheat*, 988 F.3d 299, 307–08

(6th Cir. 2021). So Cunningham claims that even if he sold drugs to Overly—a known drug user—there's no evidence that he intended for Overly to sell them to other customers. But the trial evidence supports the reasonable inference that Cunningham had such intent. For one, the informant testified that Cunningham once approached her outside her apartment and told her she could get drugs from Overly. That alone shows Cunningham knew Overly was dealing to other customers. So too does the informant's testimony that Cunningham didn't want another dealer to step on Overly's "turf." R. 195, Pg. ID 1704–05. Why would a mere buyer have "turf" to protect? Plus, during one of the recorded buys, Overly told the informant that he and Cunningham had discussed her. A reasonable juror could certainly conclude from that testimony that Cunningham intended for Overly to distribute the drugs, including to the informant, and knew he was doing so.

Caselaw further supports upholding the jury's verdict. Courts may consider several factors to distinguish a drug conspiracy from a buyer-seller relationship, including the volume and repetition of sales, standardized transactions or practices, and evidence of mutual trust. *United States v. Mosley*, 53 F.4th 947, 957–58 (6th Cir. 2022). These factors favor finding a conspiracy here. Evidence showed that Cunningham supplied Overly with methamphetamine eight times within a seven-month span. We've previously found that monthly deals are repetitive enough to imply a conspiracy. *United States v. Castro*, 960 F.3d 857, 865 (6th Cir. 2020). What's more, each buy followed roughly the same pattern, with Overly meeting Cunningham outside his apartment and then returning with drugs. The pair's "established procedure for drug dealing supports the inference of conspiracy." *Mosley*, 53 F.4th at 958 (quotation omitted). Finally, evidence from the controlled buys suggested that Overly and Cunningham trusted each other, as Cunningham set prices, paid Overly in drugs and money, and protected Overly's "turf" when another dealer tried to interfere with their relationship.

Based on the government's evidence, a reasonable juror could find that Cunningham conspired with Overly to distribute methamphetamine. So his sufficiency challenge to that count fails.

2.

Next, Cunningham challenges his convictions for aiding and abetting the distribution of methamphetamine. Those convictions required the government to prove beyond a reasonable doubt that Cunningham knowingly or intentionally aided and abetted Overly in the distribution of methamphetamine. *See Sadler*, 24 F.4th at 544; *see also* 21 U.S.C. § 841(a)(1). A reasonable juror could conclude Cunningham did just that, so his sufficiency challenge fails.

The same evidence that proved Cunningham's conspiracy charge also supported his convictions on the aiding-and-abetting charges. Overly met with Cunningham during all eight buys before selling the informant drugs. And Cunningham knew exactly what Overly was doing. After all, Cunningham told the informant that she could buy drugs from Overly, and he even discussed the informant with Overly. The comprehensive trial evidence about these transactions gave the jury a reasonable basis to find that Cunningham knowingly aided and abetted the distribution of methamphetamine.

Cunningham repeats the same challenges he raised as to the conspiracy charge: There was no evidence that he intended for Overly to sell the drugs to other customers, and he was simply present near the controlled buys. But the government presented enough evidence for a reasonable jury to conclude otherwise, just as it did for Cunningham's conspiracy charges. That evidence showed Cunningham knew Overly was selling to the informant and was actively involved in each buy.

First, the government introduced content from Cunningham's cell phone. That evidence included images of drugs in quantities "far more than what would be typical of a user amount." R. 196, Pg. ID 1876. Other photos depicted drugs packaged for sale and scales. The government also produced messages from various buyers asking to purchase drugs from Cunningham.

Plus, the government presented evidence that Cunningham exhibited behaviors typical of drug dealers. For instance, law enforcement recovered an airsoft pistol designed to look like a Glock from his car. An agent testified that dealers often carry weapons like that to appear armed and increase their "intimidation factor." *Id.* at 2020–21. He then told the jury that dealers frequently drive cars registered to other people to avoid officers tracing the license plates back to them. That practice also allows dealers to blame the vehicles' owners if police find drugs in the car. During the relevant period, Cunningham habitually drove his sister-in-law's car. Finally, an officer testified that Cunningham circled the area around Overly's apartment several times before a drug buy, a common tactic dealers use to avoid police surveillance. A reasonable juror could infer from this evidence that Cunningham intended to distribute methamphetamine to people other than just Overly.

B.

In the alternative, Cunningham asks for a new trial based on the district court's (1) exclusion of exculpatory statements that Overly made and (2) admission of evidence about Cunningham's past cocaine dealing. We review the arguments he presented to the district court for abuse of discretion. *United States v. Page*, 163 F.4th 385, 396 (6th Cir. 2025). But that discretion is "broad," so we reverse only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment." *Id.* at 397 (quotation omitted). And to

receive a new trial, a criminal defendant must also show that any evidentiary error affected his substantial rights. Fed. R. Crim. P. 52(a). Cunningham hasn't identified any such errors.

1.

Before trial, Cunningham moved to introduce statements that Overly made at his change-of-plea hearing. As relevant here, Overly denied that Cunningham was his co-conspirator. The government moved to exclude those statements as inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. In response, Cunningham argued that the evidence fell within the hearsay exception for statements made against the declarant's penal interest. Fed. R. Evid. 804(b)(3)(B). The district court rejected that argument, which Cunningham renews on appeal.

Rule 804(b)(3)(B) allows admission of a hearsay statement if: (1) the declarant is unavailable, (2) a reasonable person would view the statement as adverse to the declarant's penal interest, and (3) corroborating circumstances "truly establish" its trustworthiness. *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) (quotation omitted). Overly invoked his Fifth Amendment right against self-incrimination and declined to testify, so he was unavailable. *See* Fed. R. Evid. 804(a)(1). But his statements didn't expose him to criminal liability and lacked the necessary corroborating circumstances, so the district court correctly excluded them.

Start with Overly's purported penal interest. Rule 804(b)(3)(B) applies to statements that "tend[] to expose the declarant to criminal liability." Overly's statements did no such thing. While pleading guilty, Overly admitted to conspiring to distribute methamphetamine. He simply refused to identify his co-conspirator. In relevant part, Overly stated, "I know that myself and Mr. Cunningham did not conspire to sell drugs together." R. 109, Pg. ID 409. That didn't expose him to criminal liability. *See Williamson v. United States*, 512 U.S. 594, 600–01 (1994) (clarifying that Rule 804(b)(3) doesn't cover "non-self-inculpatory statements"). Overly had already admitted

that he conspired with at least one other person, and that person's identity was irrelevant to any punishment he'd receive. *See Rogers v. United States*, 340 U.S. 367, 375 (1951) (holding that co-conspirator's identity isn't required for conspiracy conviction). Overly also claimed that sometimes he pretended he was going to get drugs from someone else when he actually already had them. Instead, he left his apartment during the buys to either "throw [the informant] off" or "go[] to the store and stuff." R. 109, Pg. ID 447–48, 454. But even if true, these statements didn't inculpate Overly—he was in the midst of pleading guilty to every count against him, so he had nothing to lose by recounting the details.

Next, turn to trustworthiness. The circumstances of Overly's statements indicate they were unreliable. For statements to be admissible under Rule 804(b)(3), the surrounding circumstances must indicate that the declarant made those remarks "without an intent to fabricate." *United States v. Blake*, 166 F.4th 611, 621 (6th Cir. 2026). But the rest of Overly's plea colloquy indicates the opposite. Overly twice said he didn't "want to be a snitch." R. 109, Pg. ID 411. That admission suggests that Overly was more concerned with protecting his co-conspirator's identity than the truth.

We've also found corroborating circumstances when "the involved parties do not have a close relationship." *United States v. Price*, 134 F.3d 340, 348 (6th Cir. 1998). Again, the opposite is true here. Cunningham's entire defense theory was that he and Overly were "family members" who "communicated regularly and often." Appellant's Br. at 38–39. In this context, Overly's statements weren't trustworthy. And that means they weren't admissible under Rule 804(b)(3)(B).

On appeal, Cunningham also argues that Overly's statements are admissible under Rule 806. But he didn't make that argument below, nor was it "apparent from the context." Fed. R. Evid. 103(a)(1)(B). So we review it for plain error. *United States v. Arnold*, 486 F.3d 177, 193

(6th Cir. 2007) (en banc). That means Cunningham must identify an obvious or clear error that affected his substantial rights and the "fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quotation omitted).

Rule 806 allows a defendant to attack the credibility of certain out-of-court statements by introducing evidence to impeach the declarant's credibility. In this case, the district court admitted statements that Overly made to the confidential informant during controlled buys. *See* Fed. R. Evid. 801(d)(2)(E) (allowing introduction of statements made by a co-conspirator "during and in furtherance of the conspiracy"). Because those numerous statements indicated he was working with Cunningham, Overly's later denial that he conspired with Cunningham could ordinarily be admitted as a prior inconsistent statement to attack his credibility. *See* Fed. R. Evid. 806, 613. But when, as here, the circumstances of an inconsistent statement indicate that it was "contrive[d]," its exclusion is "not the kind of particularly egregious mistake" that affects the fairness, integrity, or reputation of judicial proceedings. *Arnold*, 486 F.3d at 194 (quotation omitted). And Overly's admitted motive (not "want[ing] to be a snitch") strongly suggests that his statement exculpating Cunningham wasn't genuine. R. 109, Pg. ID 411. So any error in excluding it wasn't plain.

2.

Cunningham also argues that the district court erred by admitting evidence of his past cocaine sales to prove he distributed methamphetamine. So he must show that the district court abused its discretion by admitting that evidence. *United States v. Fraser*, 448 F.3d 833, 838 (6th Cir. 2006). And Cunningham can't meet that standard.

In general, evidence of prior bad acts isn't admissible to prove a person's character trait and show that the person acted in accordance with that trait on a given occasion. Fed. R. Evid.

404(b)(1). However, such evidence may still be admissible if it's "offered for an admissible purpose," that purpose is "material or 'in issue,'" and it's "probative" for that purpose. *United States v. Hazelwood*, 979 F.3d 398, 411 (6th Cir. 2020) (quotation omitted). One such purpose is showing intent. Fed. R. Evid. 404(b)(2). Here, the government sought to use evidence of Cunningham's prior cocaine sales to show his intent to distribute controlled substances, including methamphetamine. That evidence included text messages from Cunningham's phone referring to cocaine sales and testimony from a customer who bought cocaine from him three to four times per week during the year leading up to his arrest.

This evidence was relevant to Cunningham's methamphetamine charges because those charges required the government to prove his specific intent. When specific intent is among the elements of an offense, intent is automatically "in issue." *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994). So evidence of prior acts is admissible to "help[] prove a defendant's specific criminal intent." *United States v. Cordero*, 973 F.3d 603, 620 (6th Cir. 2020) (quotation omitted). The first count, for conspiracy to distribute methamphetamine, required the government to prove that Cunningham knew about and intended to join a conspiracy. *See Bailey*, 170 F.4th at 582–83. And the remaining counts for aiding and abetting the distribution of methamphetamine required proof that Cunningham knowingly or intentionally helped distribute methamphetamine. *See United States v. Sumlin*, 956 F.3d 879, 891 (6th Cir. 2020); *Sadler*, 24 F.4th at 544. Because all the charges placed intent at issue, the government could introduce Cunningham's prior acts.

In response, Cunningham argues that the district court shouldn't have admitted this evidence because his defense theory didn't involve intent. Instead, he simply argued that he wasn't involved in dealing methamphetamine and just happened to be around Overly when the buys occurred. It's true that a defendant's theory of the case may shape what facts are "in issue" and

what evidence may be admissible to prove them. *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996). But the defense theory doesn't solely determine what's relevant to proving guilt. *See Cordero*, 973 F.3d at 620. And it doesn't change that the elements of the charged crimes placed intent at issue here. Thus, the district court didn't err in admitting evidence to establish such intent.

*       *       *

We affirm.